CASE 61—PETITION EQUITY—FEBRUARY 17.

## Millett vs. Parker, &c.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. In an action upon a covenant the surety is a competent witness for the principal, both of whom are sued, to sustain the defense set up by the principal that he was to be bound only on condition that another would execute it, which had not been done.

2. A remote, uncertain, or contingent interest does not render a witness incompetent, but only goes to his credibility.

3. A judgment will not be reversed merely for an error in rejecting a deposition, which, if it had been admitted, would not have had the effect of changing the judgment.

4. Writings which are delivered to a third person to hold until the happening of some event, or until the writings are executed by additional obligors, are now regarded as *escrows*.

5. A conditional delivery to the *principal*, by a person who subscribes a paper as *surety*, will not make such paper a mere *escrow*. The delivery of the paper, to constitute it an escrow, must be made to a *third* person, and not to a co-obligor; and this whether the instrument be assignable or not.

6. One who signs a covenant as surety, upon the condition and agreement between him and his principal that it is not to be binding upon him, or delivered to the covenantee, unless another person should also sign it as surety, is bound thereby, although the principal to whom he intrusted it deliver it to the covenantee without a compliance with such condition, of which and its breach the latter had no notice.

JAS. HARLAN and T. A. MARSHALL, for appellant, cited *Civil Code, sec.* 670, *sub-sec.* 6 ; 2 *Ala. Rep.*, 88 ; 11 *Peters*, 86, 95 ; 18 *B. Mon.*, 128 ; *Hardin vs. Stone, MS. opin., December*, 1853 ; 9 *N. Y. Howard Practice Rep.*, 385 ; 10 *Ib.*, 385 ; 5 *Mon.*, 269 ; 7 *B. Mon.*, 220 ; 3 *Term Rep.*, 27 ; 7 *Ib.*, 601 ; 3 *Randolph*, 316 ; 3 *English (Ark.) Rep.*, 157 ; 7 *Ib.*, 746 ; 5 *Mon.*, 57 ; 6 *Mon.*, 616 ; 14 *B. Mon.*, 321 ; 1 *Bailey S. C. Rep.*, 83 ; *Ib.*, 62 ; 1 *B. Mon.*, 296 ; 4 *Cranch*, 292 ; 2 *Condensed Rep.*, 92 ; 7 *J. J. Mar.*, 281 ; 5 *Humphreys*, 133 ; 4 *Taunton*, 464 ; 1 *Stat. Law*, 150 ; *Rev. Stat.*, 193 ; 1 *Mon. & Harlan's Dig.*, 100 ; *Civil Code, sec.* 398 ; 1 *Met.*, 577 ; *Ib.*, 58.

HUGHES & DALLAM, on same side, cited *Civil Code, sec.* 670, *sub-div.* 6 ; 1 *Mar.*, 294 ; 2 *Dana*, 156 ; *Greenleaf's Ev.*, *secs.* 386, 402 ; 4 *Dana*, 106 ; 5 *Ib.*, 382 ; 9 *Ib.*, 43 ; 5 *B. Mon.*, 57 ; 13 *Ib.*, 202 ; 1 *Cranch*, 239 ; *Coke on Littleton*, 36, (*a*); *Sheppard's Touchstone*, 58, 59 ; 4 *J. J. Mar.*, 572 ; 1 *Mar.*, 98 ; 1 *Eng. Law and Eq. Rep.*, 227 ; 6 *J. J. Mar.*, 32 ; 4 *Cranch*, 219 ; 11 *Peters*, 86 ; 7 *J. J. Mar.*, 281 ; 3 *Greene*, 155 ; 4 *Shepley*, 140 ; 2 *Iredell*, 338 ; 3 *Ala.*, 88 ; 2 *Leigh*, 159 ; *Minor's Rep.*, 103 ; 2 *J. J. Mar.*, 449 ; 10 *B. Mon.*, 266.

CROCKETT & VANCE, for appellees, cited *Civil Code, secs.* 670–676 ; 1 *Greenleaf Ev.*, *secs.* 347, 391, *and notes*; 5 *Mon.*, 298 ; 7 *B. Mon.*, 226 ; 7 *Cranch*, 206 ; 2 *Smith's Leading Cases*, 94 *and notes;* 3 *Ran.*, 316 ; *Rev. Stat.*, 204, *sec.* 14 ; 3 *Litt.*, 74 ; *Perkins Con., sec.* 138 ; *Greenleaf's Cruise Dig.*, *tit.* 32, *ch.* 2, *secs.* 68–76 ; *Blackstone's Com.*, 307 ; *Sheppard's Touchstone*, 58, 59 ; 4 *Kent's Com.*, 496 ; 2 *J. J. Mar.*, 457, 460 ; 13 *John.*, 286 ; *Wright vs. Shelby Railroad Co.*, 16 *B. Mon.;* 2 *Mar.*, 189.

JOHN M. HARLAN on same side.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT :

W. B. Vansant and W. L. Parker were partners as brick-masons in the town of Henderson. They dissolved their partnership in 1856, and Vansant having purchased Parker's interest

VOL. 2—77.

in the concern, agreed to pay all the debts against the firm. He also agreed to give to Parker a bond with good security, that he would perform his part of the contract, and save him harmless from any violation thereof. In fulfillment of this latter stipulation he delivered to Parker the following instrument:

"We undertake and bind ourselves unto W. L. Parker, that W. B. Vansant will perform his part of the contract of dissolution of partnership between the said Vansant and Parker, and that he will save him harmless therein'. Given, &c., this 1st of April, 1856.

"Wм. B. Vansant,<br>" F. Millett."

Some of the creditors of the firm of Vansant and Parker filed their petitions in equity, in which they set forth the dissolution of the firm, and alleged that by the terms of the dissolution Vansant was to pay all the debts of the firm, and had executed a covenant, with Millett as his surety, that said firm debts should be paid. They also alleged that Vansant and Parker were insolvent, and on that ground they claimed the right, by substitution in equity, to look to Millett, and hold him responsible for the payment of their debts.

Millett, in his answer, admitted the signing of the covenant as the surety of Vansant, but alleged that he had signed it upon an express agreement between him and Vansant, that it was also to be signed by one R. G. Beverly as an additional surety," and that the paper was handed back to Vansant for the purpose only, and with the express stipulation and condition to be taken by him to said Beverly to be executed by him, and was not to be a covenant or obligation at all upon this defendant until that was done." He also alleged that he had not delivered said writing to Parker, or authorized its delivery to him in its present condition; and that he believed, and so charged, that Parker knew of the manner and condition upon which the defendant's signature was procured.

The defendant, Millett, in order to sustain this defense, took the deposition of his co-defendant, W. B. Vansant, who testified that the paper in question was signed by Millett upon the

express understanding and condition that R. G. Beverly was also to sign it, and that unless he did sign it the witness was not to deliver it to Parker, nor was it to be binding on Millett. He also testified that he did afterwards deliver it to Parker, without the knowedge or consent of Millett, and without having obtained the signature of Beverly; but he did not state that Parker was apprised or had any information of the agreement between Millett and the witness.

The plaintiffs excepted to the deposition of Vansant, and the exception was sustained by the court. And as Millett had no other evidence to rely upon to support his answer, judgments were rendered against him in favor of the several plaintiffs, and he has appealed to this court.

The first question that arises on the appeal is that which involves an inquiry into the competency of Vansant as a witness in favor of his co-defendant.

The fact that he was a party to the action did not render him incompetent as a witness, that disqualification having been removed by the provisions of the Civil Code. Before the adoption of the Civil Code, the principal obligor, who was not a party to the action, could be made a witness for his co-obligors, who were his sureties in the bond sued upon, by being released by them from all liability for the costs that might be recovered against them. As the principal obligor was not a party to the action, he was only liable for the demand sued for; but if a recovery was had against his sureties, he would be liable to them, not only for the amount of the demand sued for, but also for the costs of the action. For this reason he was regarded as interested, and not competent to testify for them unless they released him.

Where, however, as in this case, he is a party to the action, a judgment against the surety could not increase his liability, inasmuch as the judgment would have to be against both of them, and his responsibility to his surety and to the plaintiff would be precisely the same. He, therefore, would not have any interest in the result of the action arising from his supposed liability over to his surety, and would not be incompetent on that ground, even if he were not released by the surety; but as

such a release was executed, all objection to his competency on that ground was fully removed.

It is however contended that he had an interest in defeating a recovery by the plaintiff against the surety, as such a recovery would increase the amount of costs for which he would be liable in the action to the plaintiff, and for that reason his deposition was properly excluded.

All persons are competent to testify in a civil action, so far as their competency depends upon the question of interest, who are not parties to an issue, or interested in the issue. (*Civil Code, sec.* 669, 670.) The witness in this case was not a party to the issue between the plaintiffs and Millett, nor was he interested in that issue. The decision of that issue could not affect his liability to the plaintiffs, but it would remain the same, whether the decision was in favor of, or against his co-defendant.

It is however contended, that although he was not interested in the issue itself, his interest might be affected by its result, for if it were decided in favor of his co-defendant, the costs for which he might be rendered liable in the action would be thereby diminished.

This ground of interest, however, was very uncertain, and depended on several contingencies. In the first place, the witness himself might succeed in the issue he had made with the plaintiffs ; and if he did, he would not be liable for any of the plaintiffs' costs; and in the next place, if a judgment were recovered against him, he would be liable to the plaintiffs for the whole costs of the action, unless some part of them had been incurred exclusively in relation to the trial of the issue with Millett. If the plaintiffs should not take any depositions to be read on that issue, nor incur any other costs but such as were incident to the whole action, then the liability of the witness, so far as the costs of the action were concerned, would, in the event that a judgment was recovered against him, be the same whether his co-defendant Millett succeeded or was defeated in his issue with the plaintiffs. If, therefore, he had any interest in the result of the issue between the plaintiffs and his co-defendant, it was an interest that was wholly contingent and uncertain.

The rule is, that a remote, uncertain, or contingent interest, does not render a witness incompetent, but only goes to his credibility. We are therefore of the opinion that the circuit court erred in rejecting the deposition of Vansant.

If, however, the plaintiffs were entitled to judgments against Millett, notwithstanding the testimony of this witness, then the judgments should not be reversed, merely for the error in rejecting a deposition, which, if it had been admitted, would not have had the effect of preventing a recovery by the plaintiffs. It therefore becomes necessary to decide, whether the facts proved by the witness were sufficient to exonerate the surety from all liability on the paper upon which the actions were founded.

On behalf of the appellant, it is argued that the paper in question was merely an *escrow*, and as the condition upon which its delivery to Parker was made to depend was not complied with, the instrument was not fully executed, and consequently was not obligatory on the appellant.

An escrow is defined to be a writing delivered to a third person to hold, until some conditions be performed by the grantee, or the person to whom it is to be delivered, and is not to take effect till the conditions be performed. (2 *Black. Com.*, 307.)

But although an *escrow* may have been originally a writing which was delivered to a third person, and was not to take effect until certain conditions were performed by the grantee, yet writings which are delivered to a third person to hold until the happening of some event, or until the writings are executed by additional obligors, are now regarded as *escrows*.

The important question, however, is, will a conditional delivery to the principal, by a person who subscribes a paper as surety, make such paper a mere *escrow*, and not obligatory on the surety, though it be delivered by the principal obligor to the person for whose benefit it was executed before the conditions have been complied with? Or must the delivery of the paper, to constitute it an escrow, be made to a third person, and not to a co-obligor?

To support the position that a conditional delivery by a surety to his principal, will be sufficient to make the paper be

regarded as an escrow, we have been referred to the cases of *Pawling against the United States*, (4 *Cranch*, 219,) and of the *United States vs. Leffler*, (11 *Peters*, 86,) decided by the supreme court. In the first mentioned case it does not appear to whom the instrument was delivered, or who had the possession of it at the time of its conditional execution. The position contended for is not therefore sustained by any thing that was decided in that case. And although in the other case it may be inferred, from what appears in the opinion of the court, that the conditional delivery of the instrument sued on was made to the principal obligor, the legal effect of such a delivery was not discussed or considered, but was assumed by the court as being sufficient to make the instrument a mere escrow.

The case of *Bibb vs. Reid & Hoyt*, (2 *Alabama Reports*, 88,) and the case of *Perry vs. Patterson*, (5 *Humphreys*, 133,) were both decided on the authority of the two cases before mentioned, without any investigation of the merits of the question.

The case of *Carswell's ex'or vs. Rennick & Wood*, (7 *J. J. Marshall*, 281,) is also relied upon in support of the proposition that a conditional delivery by the surety, to his principal, has the legal effect of making an instrument thus delivered operate merely as an escrow. The delivery of the bond in that case was, however, made to the clerk of the county court, it being an official bond, and the question there was, whether the delivery to the clerk of the court was a delivery to the obligee in the bond; for if it were, the condition was void, inasmuch as there could not be a delivery as an escrow to the obligee himself. The court decided that a conditional delivery to the clerk was not necessarily an effectual delivery to the obligee, and consequently that the instrument was merely an escrow. But the question we are now considering did not arise in that case.

This question is not, however, an entirely open one in this court. In the case of *Taylor & Co. vs. Craig*, (2 *J. J. Marshall*, 462,) it was decided that a conditional delivery of a promissory note, by a surety in the note, to his principal, did not make the instrument an escrow. And the court said, in its opinion, that when Parker, the principal in the note, delivered it to Craig, the plaintiff in the action, the latter had a right to suppose that

the signature being genuine, whenever the note was delivered to him without any condition, it would be obligatory on Taylor, the surety.

The same principle, substantially, was recognized as correct in the case of the *Bank of the Commonwealth vs. Curry*, (2 *Dana*, 142.)

And in the case of *Smith vs. Moberly*, (10 *B. Mon.*, 266,) it was held, that though the surety had signed the note under an express agreement with the principal that it was not to be delivered unless another individual should also sign it, yet as it had been delivered to the payee, who was ignorant of the promise of the principal to procure another surety, the surety who signed it was bound, notwithstanding the fraud of his principal. And the court, in delivering its opinion, said: "But a delivery of a writing of this character under such circumstances to the principal does not have the effect of characterizing it as an escrow; but, on the contrary, the principal should be considered as the agent of the surety, and empowered by him to pass the writing to the person to whom it may be made payable, and his delivery as being sufficient to make it effectual, unless the payee had notice of the special terms upon which it was signed. The implied discretionary authority to use the note, arising out of its possession by the principal, uncontradicted by its terms or any thing apparent on its face, cannot be restricted by any agreement between the payors themselves of which the payee had no notice."

The correctness of this principle has been subsequently recognized by this court in several cases; so that it may now be considered as firmly settled, that a conditional delivery by a surety in a promissory note to his principal, does not have the effect to make the writing a mere escrow, but that a conditional delivery, to have that effect, must be made to a third person.

It is, however, contended that this doctrine should be confined to such instruments as are transferable, and therefore *quasi* mercantile paper, and should not be applied to such a covenant as the one upon which this action is founded. Let us, therefore, inquire whether there is any ground for such a distinction, or whether the same reasons which make it proper.

to apply this doctrine to writings which are assignable, do not also make it proper to apply it to other instruments?

A writing, to be an escrow, must be delivered to a *third* person to hold until the condition be complied with upon the performance of which it is to have effect. It cannot be an escrow if it be delivered to the obligee. There are, properly speaking, but two parties to a joint obligation. The obligors, all together, constitute one party, and the obligee the other. A delivery of the writing to the obligee by one of the joint obligors is as effectual as if made by all of them. While the writing remains in the hands of the obligors, or either of them, it imposes upon them no obligation whatever, and cannot have even the effect of an escrow. They have complete power over it, and in legal contemplation it is neither a contract nor the evidence of a contract. Not so, however, with respect to an escrow. It cannot be revoked by the party who makes it, and he in whose favor it is made is entitled to it whenever the condition is complied with by which it becomes absolute. It is obvious, therefore, from the very nature of an *escrow*, and the end it is designed to accomplish, that a writing cannot become an escrow whilst it remains in the possession of the persons by whom it is made.

Great strictness was originally required, in attending to the form by which a writing was made to operate as an escrow. It was not only necessary that the delivery should be to a third person, but that the writing should be *declared* to be delivered as an escrow, and not as a deed which was to take effect upon the performance of a condition, for if it were delivered as a deed it immediately became absolute notwithstanding the conditional delivery.

The rule which rendered it necessary that the writing should be delivered to a stranger, was not only founded on the necessity of the case, in consequence of the nature of the instrument, but upon the soundest reasons of justice and public policy. The person who was intrusted with the possession of the instrument had no inducement to deliver it before the terms had been complied with, which rendered it absolute. The person for whose benefit it was designed was usually apprised of its

character, and of the terms upon which it was to become effectual; and the whole transaction being open and fair was not calculated to result in either fraud, injustice, or imposition.

If, however, a surety be permitted to sign an instrument, and make a conditional delivery thereof to the principal obligor, with the effect of imparting to the writing the character of an escrow, the security against imposition, which is furnished by the rule that requires the conditional delivery to be made to a stranger, is completely removed, and there is no security against the perpetration of the most gross frauds. The principal obligor is the person who desires to use the instrument for his own purposes; the surety, by putting his name to the paper, and leaving it in the possession of his principal, enables him to make use of it, and impose on a person who is ignorant of the secret agreement between the obligors. In such a case, the surety trusts to the promises of his principal; he does not deliver the writing to him as an *escrow*, but as his obligation, which he is not to use until he procure an additional surety. If, however, he violates the trust reposed in him, and makes use of the writing, the surety, although his confidence has been abused, is bound by the instrument. He trusts in the good faith of his principal, and if that trust be abused, its abuse does not furnish him with any good cause of complaint against the obligee. He can, by placing the writing in the hands of a third person, with directions not to deliver it, either to the principal obligor or to the obligee, until it be executed by another person as surety, not only effect his object, but also guard against the practice of imposition upon the obligee. But a delivery to the principal obligor, who is having the instrument executed for his own use, is in effect a delivery to the obligee, inasmuch as it enables the former, by delivering it to him, to apply it to the purpose for which it was designed.

This doctrine, in its application to writings which are transferable, may have a more extended application than it can have to writings like the one upon which this action is brought, and for that cause may be regarded as more peculiarly applicable to the former than to the latter. But the reasons upon which the doctrine is founded apply with equal force to both

classes of writings. A conditional delivery by the surety, to his principal in a joint covenant, is similar in its effects to a conditional delivery by a surety to his principal in a promissory note. In neither case can it be said with any propriety that the delivery is made to a stranger, or third person, the terms being synonymous. The writing is still in the possession of the parties, and has not acquired any of the essential attributes of an escrow, which can only be created by a delivery to a third person.

So far as the courts have adopted a different doctrine, they have departed from the common law on the subject of escrows, and have introduced a rule, the tendency of which is to. encourage the perpetration of frauds on the persons to whom such writings are executed. By adhering to the common law rule upon the subject, the obligee will be rendered much more secure against fraud, and the surety will not incur the risk of violated faith on the part of his principal.

We are therefore of the opinion that the testimony which was rejected was insufficient to support the defense relied upon, and if it had been admitted, still that a judgment should have been rendered against the appellant. He alleged in his answer, that Parker, to whom the covenant was executed, had notice of the promise which was made by Vansant that the writing should not be delivered unless it was signed by Beverly; but there was no testimony whatever tending to prove that he had any information that such an agreement had been entered into by the parties. If he had been apprised of the existence of that agreement, then he would have acted in bad faith to have accepted the covenant when it was offered to him by the principal obligor. But being ignorant that any such agreement had been made by the obligors, he had a right to presume that the instrument had been prepared for his acceptance, and that the obligor who had it in his possession was authorized to deliver it to him.

Wherefore, the judgment is affirmed.