EUREKA MARBLE COMPANY AND OTHERS *v.* WINDSOR MANUFACTURING COMPANY AND ANOTHER.

[ IN CHANCERY. ]

*Measure of Damages.*

A delinquent is in general bound to make good the loss occasioned by his delinquency; yet, if one who is entitled to the benefit of a contract can by the exercise of reasonable diligence and ordinary prudence protect himself from loss by reason of a breach thereof, he is bound to do so. Thus : Before the opening of the quarrying season in the spring of 1868, the orators bought of defendants a patent stone channelling machine, at the price of $6,000, defendants agreeing to indemnify them for loss by reason of any suit that might be brought for infringement of other patents in the use thereof. Orators used the machine till December 12, 1870, when they were enjoined from further use thereof by owners of another patent of which orators' machine had been adjudged to be an infringement, whereupon they hoisted the machine from the quarry, and set it aside, where it ever after remained. Orators might then have bought another equally valuable machine at the same price ;

but as defendants from time to time gave them to understand that they would furnish them another efficient and satisfactory machine that should be non-infringing, they chose to and did hire their channelling done at regular prices, but at an expense in the succeeding season greater by $1,749.80 than they would have incurred had they been permitted to use their own machine. By the opening of the season of 1872 it came to be understood that defendants would not be able to furnish such a machine, but orators continued to hire their channelling done as before, until the total increased cost amounted to $9,243.45, which, with the use of the money invested in their machine, they sought to recover. *Held*, that orators, in the exercise of such prudence, &c., should have purchased another machine in the spring of 1872, when they learned that defendants would not be able to furnish them one ; and that they were therefore entitled to recover only a sum equal to the cost of another machine as of that date, and the increased expense in channelling up to that time, with interest, subject to the right of the defendants to take back the old machine, or apply its value in reduction of the sum in damages so to be recovered.

APPEAL from the Court of Chancery.

It appeared that on December 9, 1867, the orators ordered of the defendants "one of their Lamson's Patent Stone Channelling Machines" at the price of $6,000, the defendants then, and again more particularly in the following spring, agreeing "to defend the patent right" and save the orators "harmless from loss" on account of any suits that might be brought for the infringement of other patents in the use thereof. In May, the defendants having completed the machine, delivered it to the orators, and received from them the contract price. The orators used the machine in their quarry each quarrying season thereafter until December 12, 1870, when they were enjoined from further use thereof at suit of The Steam Stone Cutter Company, that company having before then brought suit against the defendants, in the United States Circuit Court for the District of Vermont, for infringement of the Wardwell patent, so-called, and, at the October Term of that court then last past, obtained a decretal order deciding in effect that said machine was an infringement of said patent. The orators thereupon hoisted the machine out of the quarry, covered it with canvas and set it aside on their grounds, where it has ever since remained. At the September Term, 1872, Windham County, the orators filed the bill in this cause, alleging certain of the facts above stated and other material facts, and praying for an account of the sums paid by the orators for said machine and for transporting and repairing the same, an account

of the damage to the orators' business by reason of the loss of the use of the machine, and an account of the "damages, profits and costs" that the Steam Stone Cutter Company might be entitled to ; for a decree for payment of the sum thereupon found due ; and for general relief.  To that bill the defendants demurred, but the demurrer was overruled, and at the September Term, 1876, a master was appointed, under mandate of February, 1874, from this court, "to take and state the account of all necessary damages to the orators by reason of the loss of the use of said machine during the time its use was suspended . . . in obedience to said writ of injunction," &c.

The master found that after the orators were enjoined the defendants gave them to understand from time to time that they would furnish another machine that would do its work efficiently and satisfactorily, and infringe no patent, but that although the defendants gave the orators no formal notice to that effect, it came to be understood by both parties by the opening of the season in the spring of 1872, that they would be unable to do so ; that up to that time the orators had hired 8,749 feet of channelling done at regular prices, but at a cost to them of twenty cents per foot more than it would have cost them had they been permitted to do it with their own machine, or at a total increased cost of $1,749.80 ; and that up to May 1, 1877, they had hired 61,623 feet channelled, at an average increased cost of fifteen cents per foot, or a total increased cost of $9,243.45.   The master further found that the only courses open to the orator when enjoined, other than the one taken in hiring as aforesaid, were to resort to hand labor, which would have been uneconomical, or to buy another machine ; and as to the possibility and expediency of taking the latter course the master found that there were machines of two other kinds extensively used in Rutland, where the orators' quarry was situated, and in that vicinity, — the Wardwell machine, the right to which was owned by the Steam Stone Cutter Company, and the Diamond Borer, otherwise known as the Sullivan machine,— machines of both of which kinds were equally as valuable as the orators', and readily procurable at Rutland at the same price. The master also found, among other things not material to be

stated, that the interest at six per cent. on the cost of the machine from the time the orators were enjoined to the beginning of the September Term, 1877, would be $2,430, and the interest for the same time on $500 that the orators were obliged to pay soon after they bought the machine, to put it in condition to work as represented, would be $202.50, or the sum of $2,632.50 in all.

At the last mentioned term, the court, BARRETT, Chancellor, without argument, ordered that a decree be entered for the orators for the last named sum and costs.

Appeal by both parties.

*Davenport & Eddy* and *L. M. Read*, for the orators.

The orators are entitled to such damages as they may have sustained by reason of the loss of the machine while in the exercise of ordinary reasonable prudence and economy. *Ferris* v. *Barlow*, 2 Aik. 106 ; *Clifford* v. *Richardson*, 18 Vt. 620 ; *Copper Co.* v. *Copper Mining Co.* 33 Vt. 92 ; *Smith* v. *Smith*, 45 Vt. 433 ; *Fletcher* v. *Tayleur*, 17 C. B. 21 ; *Corey* v. *Thames Iron Works Co.* Law Rep. 3 Q. B. 181 ; In re *The Trent* v. *Humber Co.* Law Rep. 6 Eq. 396 ; *British Columbia Saw Mill Co.* v. *Nettleship*, Law Rep. 3 C. P. 499, and cases *passim*. Under that rule the orators are entitled to recover what it actually cost them to channel their marble more than it would have cost had they used their own machine, and the loss of the use of the money invested in the machine. If the orators should have bought another machine on the opening of the season of 1872, then they should recover the sum of $1,749.80 and the cost of a new machine with interest on both sums.

But in any event they cannot recover less than the sum of $1,749.50 with interest, together with interest on the cost of the machine and improvements.

*E. J. Phelps*, for the defendant.

The rule of damages is obvious. It is the value of the right to use the machine between the time of the service of the injunction and the commencement of the suit; and as that value is not shown, no judgment except for nominal damages can be entered.

The rule claimed by the orators is absurd.    On their theory, if the injunction should be made perpetual the damages would go on increasing forever.    But had the machine been taken from them and destroyed, on no known rule of law could the orators have recovered more than its value.

The rule adopted by the chancellor, though more reasonable, cannot be sustained.    It assumes the value of the machine when the injunction was served to have been cost.    But it had been used three seasons.    It also assumes that the orators' business was so far profitable that the machine repaid interest on its cost. That may or may not have been true, and is a speculative inquiry upon which courts will not enter.

But whatever rule is adopted, the period for which damages are recoverable is limited by the beginning of the suit.    No more in equity than at law can recovery be had on facts that transpired after suit is brought.    Prospective damages cannot be recovered. The duration of the injunction cannot be foreseen.

The case is not one where orators should be allowed to specu- late.    Defendants should make good their guaranty, but not more.

The opinion of the court was delivered by

DUNTON, J.    The master finds and reports that the defendants from time to time after the use of the Lamson machine was en- joined, gave the complainants to understand that they, the defend- ants, would furnish them with another machine capable of doing efficient work satisfactorily to them, that would not infringe any- body's patent ; but that it came to be understood, by the opening of the season of 1872, that they would not be able to do it ; and that up to this time the complainants had 8,749 feet of channelling done, at a cost to them of twenty cents per foot more than it would have cost them, had they been permitted to do it with their own machine.    The master also finds that the Wardwell machine, owned by the Steam Stone Cutter Company, and also the Dia- mond Borer, known as the Sullivan machine, were readily pro- curable at Rutland, where the complainants' quarry is located, at the price of $6,000 each, and that they were each equally as valuable as the Lamson machine in question.

The master also finds that it cost the complainants, up to May 1, 1877, the sum of $9,243.45 more to do their channelling than it would had they been permitted to do it with their own machine. The mandate sent from this court, when this cause was before it in 1874, to the Court of Chancery, required its reference to a master, " to take and state the account of all necessary damages to the orators by reason of the loss of the use of said machine during the time its use was suspended . . . in obedience to said writ of injunction," and directed a decree for the orators for the same.

The question now before us is, what damages have the complainants necessarily sustained by the loss of the use of the Lamson machine during the time its use was suspended as aforesaid ? They are such damages as the complainants, by the exercise of reasonable diligence and ordinary prudence, could not prevent, under the circumstances in which they were placed.

It was the duty of the complainants to protect themselves from the injurious consequences of the injunction in question, so far as they could do so by reasonable diligence and ordinary prudence, or at a reasonable expense, for which expense they can charge the defendants.

Says WEST, J., in *Miller* v. *Mariner's Church*, 7 Greenl. 55 : " In general, the delinquent is holden to make good the loss occasioned by his delinquency. But his liability is limited to the direct damages, which, according to the nature of the subject, may be contemplated or presumed to result from his failure. Remote or speculative damage, although susceptible of proof and deducible from the non-performance, are not allowed ; and if the party injured has it in his power to take measures by which his loss may be less aggravated, this will be expected of him." Also see *Thompson* v. *Shattuck*, 2 Met. 615.

The complainants were not in fault for not purchasing another machine prior to the spring of 1872 ; for up to that time they were led by the defendants to expect that they would furnish them a non-infringing machine that would do their work satisfactorily ; but at this time, when the master finds that it came to be understood by both parties that they would not be able to do it, in our opin-

ion, the complainants should have purchased another machine. It is true that the expense of such a purchase would have been quite large, but not so large in comparison to the extra cost of doing their quarrying without owning a machine, as to justify them in hiring it done by other machines, and charging such extra cost to the defendants. This would be ruinous to the defendants; besides, it would be extremely difficult to determine when such charges should cease, as the machine, although used, by being repaired, would last a very long time. See *Keyes* v. *Western Vermont Slate Co.* 34 Vt. 81.

Therefore, in our opinion, the complainants are equitably entitled to be paid by the defendants the extra cost of the channelling hired done by them with other machines up to the spring of 1872, it being $1,749.80, with interest thereon from May 1, 1872, and also the cost of another machine as of the same date, which would be $6,000, and interest thereon from said date.

There is nothing in the case showing the value of the old machine. It is probably worth something, and we think the defendants should have the right to elect either to take it back, or have its value as an infringing machine applied upon the damages aforesaid.

The decree of the Court of Chancery is reversed, and the cause remanded, with mandate directing a decree as above indicated.