THE PRESIDENT, &C. OF THE AGAWAM BANK *vs*. STREVER
and others.

A note for $4000, dated September 23, 1847, signed by D. and S. as principals
and three other persons as sureties, payable on demand, was deposited with
the plaintiffs, by D., under an arrangement between him and the plaintiff's
cashier that it should be held as collateral security for drafts drawn by him
on the different agents of his firm, D. &. S. at Boston and Worcester. The
plaintiff had notice that a portion of the makers signed the note as sureties
for the others. Under this arrangement the plaintiff discounted the drafts
of D. and S. and made loans to them on the credit of the note, to the amount
of $32,850, which sum had been paid prior to February, 1849. On the 13th
of that month D. and H. made their two drafts upon O. B. of Worcester,
for $1000 each, one payable in fifty days after date, and the other 60 days
after date, which drafts were discounted by the plaintiff for the drawers,
and were subsequently protested for non-payment. In an action by the
plaintiff upon the $4000 note, claiming to recover of the makers thereof the
amount of these two drafts, on the ground that they were liable for all the
indebtedness of D. and S. not exceeding $4000; *Held*, 1. That the agree-
ment of the sureties was that they would become responsible for the princi-
pals, for money to be borrowed by them of the plaintiff, to the amount of
$4000, and no more, payable on demand; that D. & S. had no authority to
enlarge or vary the liability of their sureties, without their consent, by
pledging the note as security for a loan made on time, or for money ad-
vanced upon their drafts on a third person, payable at a future day. PAR-
KER, J. dissented.

2. That the contract of the sureties could not be treated as a continuing guar-
anty; but when loans to the amount of the note had been made, the vital-
ity of the instrument was spent; and that when the amount so obtained
had been refunded, it became *functus officio*, and was no longer a subsisting
security in the hands of the plaintiff. PARKER, J. dissented.

This action was brought upon a note in the words and figures
following, to wit.

"$4000.                    Kinderhook, September 23, 1847.

On demand for value received, we jointly and severally prom-
ise to pay F. S. Bailey, Cashier, or order four thousand dollars
at the Agawam Bank, Springfield, Mass.

Signed.                    ISAAC S. DOANE.
                           WILLIAM STREVER.
                           HENRY HOYSRADT.
                           JOHN HOYSRADT.
                           ADAM A. HOYSRADT."

President, &c. of the Agawam Bank *v.* Strever.

The note was deposited with the plaintiffs by Doane, one of the makers, under an arrangement between him and the plaintiff's cashier, that it should be held as collateral security for drafts drawn by him on the different agents of his firm, Doane & Hoysradt, at Boston and Worcester. Under this arrangement, the plaintiffs had discounted the drafts of Doane & Hoysradt, and made loans to them, between the 29th of September, 1847, and the 13th of February, 1849, to the amount of $32,850. All these loans and discounts had been made on the credit of this note, and the whole amount had been paid. On the 13th of February, 1849, Doane & Hoysradt made their two drafts upon Otis Braman of Worcester, Mass. for $1000 each, one payable 50 days after date, and the other 60 days after date, which drafts were discounted by the plaintiff for the drawers, on the 15th of February. The drafts were accepted, but when they matured they were protested for non-payment. The plaintiffs claimed to recover the amount of these two drafts, in their action upon the note for $4000, on the ground that the makers of the note were liable for all the indebtedness of Doane & Hoysradt, not exceeding the amount of the note. The defendants William Strever, John Hoysradt and Adam A. Hoysradt defended the suit, and alleged that they had signed the note as sureties for Doane & Hoysradt, the other makers, and for the purpose of enabling Doane & Hoysradt to raise $4000 upon it at the plaintiffs' bank, and that when $4000 had been thus raised upon it and had been repaid, their liability ceased. The cause was tried at the Greene circuit in June, 1851, before Mr. Justice Marvin. The facts, as above stated, appearing upon the trial, the judge charged the jury that the note might be treated in the hands of the plaintiffs as a continuing guarantee, and that the plaintiffs had a right to hold it as security for any discounts or loans made to Doane & Hoysradt, upon its credit, and which remained unpaid, to an amount not exceeding the amount of the note; that if the jury believed the evidence the plaintiffs were entitled to their verdict for the amount of the two drafts. The defendants' counsel duly excepted. The jury rendered a verdict for the plaintiffs for $2261,33, for which amount with the costs, judg-

ment was perfected, and the defendants appealed to the general term.

*M. T. Reynolds,* for the plaintiffs.

*J. H. Reynolds,* for the defendants.

HARRIS, J. The note was signed by *three* of the makers, as sureties for the other *two.* By the terms of their contract they became indebted to the plaintiffs to the amount of the note, and that debt was payable on demand. Doane & Hoysradt had no authority to enlarge or vary the liability of their sureties. They were bound to the extent of their own engagement, and no farther. If the drafts in question can fairly be covered by the obligation which the sureties assumed when they signed the note, this action can be maintained, but if the terms of their contract, construed according to their reasonable import, come short of such a liability, the plaintiffs must fail in their action.

Looking at the instrument which the defendants have signed, as the evidence of what they intended, and not beyond it, there is no great difficulty in ascertaining their intent. It was, that the makers of the note should all become debtors to the plaintiffs to the amount of $4000. The case shows the further fact that, as between themselves, part of the debtors were principals, and part of them were sureties. It also appears that this fact was known to the plaintiffs. They received the note of Doane and Hoysradt, and dealt with them as the principals, and regarded the other defendants as their sureties. Under these circumstances the plaintiffs can claim no benefit from any agreement made between them and Doane & Hoysradt. If they agreed that the note should be held by the plaintiffs as collateral security, such agreement cannot affect the other defendants, unless they also assented to it, and of this there is no proof. These defendants having said in the instrument they had signed, to what extent and in what manner they would be answerable for Doane & Hoysradt, the plaintiffs must bring their case within

President, &c. of the Agawam Bank *v*. Strever.

the terms of that undertaking, before they can recover in this action.

Taking the facts as they are disclosed in the case, in connection with the note itself, and what is the fair construction of the transaction, more than this? The three sureties, aware that Doane & Hoysradt, the principals, had occasion to raise money for the convenient prosecution of their business, and willing to become responsible for such money to be borrowed of the plaintiffs, to the amount of $4000, and no more, agree with the plaintiffs that if they will lend money to Doane & Hoysradt to an amount not exceeding $4000, payable on demand, they will be answerable for the repayment of the loan, with interest. There is nothing in the transaction which imports an intention on the part of the sureties, to become liable, for any obligation which Doane & Hoysradt might incur with the plaintiffs, upon any other terms. Neither a loan, made upon time, nor a draft on a third person payable at a future day, is embraced within the terms of the contract. By their engagement the sureties had secured the right, at any moment, to terminate their liability by paying the plaintiffs their advances, and thus place themselves in a situation, without delay, to enforce indemnity from their principals. If Doane and Hoysradt might pledge the note as collateral security for a draft at sixty days, they might also for any definite period, however long, and thus the sureties, instead of incurring an obligation to pay money on demand, which they might at any moment discharge, might never be able to terminate their liability.

In *Fellows* v. *Prentiss*, (3 *Denio*, 512,) John H. Prentiss had signed a letter of credit by which he guaranteed the payment of any debt which his nephew might contract in the purchase of goods, at a credit of one year, to an amount not exceeding $500. Goods having been purchased upon the credit of this guaranty, and the credit having expired, the creditor settled with his principal debtor and took his note payable one day after date. It was held that the surety was discharged. "It is perfectly clear" says the chancellor, "that the defendant's nephew could not have been sued upon the original indebtedness

between the 8th and the 12th of September, even if the plaintiff could have sued him upon the account for the goods after the note had become payable. The extension of credit for a single day, without the consent of the surety, would discharge him as effectually as a novation to which he was not a party." And Lott, senator, says, "at the time the settlement was made the surety, by payment, would have had an immediate remedy over against the principal, and he had the right, without payment, to insist on a direct and immediate suit against the principal, for the money. These remedies were both suspended by the act of the plaintiff. It is well settled that such an extension to the principal for a precedent debt discharges the guarantor." See also, on this point, *Myers* v. *Welles*, (5 *Hill*, 463.)

Nor is the application of this principle confined to an extension of credit for a *precedent* debt. In *Birckhead* v. *Brown*, (5 *Hill*, 634,) the defendants had by a letter of credit guaranteed certain drafts to be drawn at 60 days. Drafts were in fact drawn at 90 days. It was held that the defendants were not liable, because the drafts were not drawn in pursuance of their letter of credit. Bronson, J. says, "The doctrine is a familiar one, that a surety can only be charged where the case is brought within the very terms of his contract. What may be thought a substantial performance on the part of the creditor will not answer." And again, he says, "courts are not at liberty to speculate upon the question whether the surety has or has not been injured by a departure from the terms of his contract. He has a right to say "that is not my contract, and so long as he can give this answer truly, he cannot be charged with the debt of his principal." In *Dobbin* v. *Bradley*, (17 *Wend.* 422,) the defendant had guaranteed such paper as should be drawn by one Smith, payable at a certain bank. A note was drawn in pursuance of the terms of the guaranty, except that it was not made payable at the specified bank. Before it fell due, it was deposited for collection in that bank, but it was held that the guarantor was not liable. In *Whitcher* v. *Hall*, (5 *Barn & C.* 269,) the defendant had let 30 cows to Joseph Hall for a year, for a certain rent payable quarterly. The defendant James

Hall had signed the lease as surety for the payment of the rent. It appeared, upon the trial, that the plaintiff having 32 cows in the spring, it was agreed between him and the lessee, that, instead of taking away two then, he should allow them to remain until fall and that he should then take away four. It was also proved that this change was not prejudicial to the lessee. It was held that the original agreement had not been performed, and that therefore the surety was not liable.

It seems to me, that the principle asserted in these cases, is fatal to the plaintiffs' right of action. I cannot but regard the transactions between the plaintiffs and Doane & Hoysradt as a complete departure from the transaction contemplated by the sureties' contract. They never agreed to become responsible for the drafts which Doane & Hoysradt should from time to time draw upon their customers. The most liberal construction of their undertaking will not extend it over such transactions.

But assuming that I am wrong in this, and that Doane & Hoysradt had authority to deliver the note to the plaintiffs as collateral security for money advanced to them by the plaintiffs upon such drafts, then I am of opinion that it could not be treated as a continuing guaranty. When loans to the amount of the note had been made, and had been paid, the vitality of the note was spent. It was no longer a subsisting security in the hands of the plaintiffs. When the plaintiffs' advances had equalled the amount of the note, the subsequent transactions between the plaintiffs and Doane & Hoysradt were not within the reach of its guaranty. There is nothing in the terms of the note which indicates any intention, on the part of the sureties, to become answerable for more than a single loan. Certainly there is nothing in it which requires that it should be construed into a continuing guaranty. The rule on this subject is well stated by Mr. Justice Hand, then a member of the court for the correction of errors, in *Fellows* v. *Prentiss,* above cited. "Where by the terms of the guaranty," he says, "it is evident that the object is to give a standing credit to the principal, to be used from time to time, either indefinitely, or until a certain period, there the liability is continuing; but where no time is fixed, and nothing in the instru-

ment indicates a continuance of the undertaking, the presumption is in favor of a limited liability as to time, whether the amount is limited or not." And Story, J. in *Cremer* v. *Higginson*, (1 *Mason*, 323,) says, " the presumption in all doubtful cases is, that the guaranty is not a continuing guaranty, covering an indefinite number of advances, for an indefinite space of time, but is intended to be restricted to the particular transaction, in respect of which it was created." In view of such a rule, and all the cases on the subject speak the same language, what is there in this contract which can justify a court in holding that it was intended to cover all advances which the plaintiffs should from time to time make to Doane & Hoysradt, not exceeding, of course, at any one time, the amount of the note, until the guarantors should give notice to the contrary? Is it not entirely clear, rather, that when Doane & Hoysradt had obtained upon the credit of the note the sum of $4000, it had fully performed the office for which it was intended, and, when the amount so obtained had been refunded, that its power to bind the defendants ceased?

The case of *Kirby* v. *The Duke of Marlboro'*, (2 *Maule & S.* 18,) cited by the defendants' counsel, is more nearly in point than any other case with which I have met. The action was upon a bond executed by one Coburn, as principal, and the Duke as surety. In the condition of the bond it was recited that Coburn had applied to the plaintiff to advance him money, and that the plaintiff had consented to make such advances, upon condition that the Duke would enter into that obligation, and then it was provided, that if the obligors should pay all such sums of money, not exceeding £3000, as should or might at any time thereafter be advanced and lent by the plaintiff to Coburn, or paid to his use by his order and direction, the obligation should be void. It was held, that this bond did not amount to a continuing guaranty. Lord Ellenboro' said, " this is a bond given by the surety as an indemnity for advances, to a definite amount. It is the same as if the surety had expressed that the bankers might lend to the amount of £3000, and, when an advance was made to that amount, the guaranty became *functus officio*." It seems to me, that, if instead of making this note, payable on de-

mand, the engagement which these sureties intended to enter into with the plaintiffs had been written out at length, it might have been expressed in very much the same terms as those employed in the Duke's bond. There is certainly nothing on the face of the defendants' contract which indicates any intention to incur any obligation beyond a single loan of $4000. When that loan had been made and repaid, the purpose of making the note, so far as it can be inferred from the instrument itself, was accomplished, and, like the bond in *Kirby* v. *The Duke of Marlboro'*, it was *functus officio*.

Upon this ground, therefore, as well as for the reason that the principal debtors had no authority to pledge the note as collateral security for their drafts discounted by the plaintiffs, I am of opinion that, upon the facts as they appear in this case, no action can be maintained upon the note. A new trial should therefore be awarded.

WRIGHT, J. concurred.

PARKER, J. dissented.

New trial granted.

[ALBANY GENERAL TERM, September 6, 1852. *Parker*, *Wright* and *Harris*, Justices.]