# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

———•••———

THE PEOPLE OF THE STATE OF NEW YORK *vs.* HIRAM W.
BOSTWICK and others.

A bond, for the payment of money, was executed by several persons at the
same time, as sureties, upon the representation that another person, D.,
would sign it as co-surety, and with the understanding that B., one of the
obligors, was to take the bond, but was not to deliver or use it until after
it was signed by D. It appeared that some of the obligors would not have
signed the bond, except on this condition, and that they did not otherwise
authorize its delivery. B. delivered the bond to the obligee without having
procured the signature of D. thereto. *Held*, that there was no valid deliv-
ery of the bond; that it was incomplete, and the transaction was not con-
summated; and that the condition on which the instrument was executed
not having been performed, the obligors were not liable.

*Held*, also, that this was not a case where the rule that when one of two inno-
cent parties must suffer, he who has employed the agent, and enabled him
to commit a fraud, should be the loser, rather than a stranger, was appli-
cable; the plaintiffs occupying the position of one taking a security to
which the party giving it had no title.

---

The People *v.* Bostwick.

---

That if the rule of principal and agent applied, then the obligors would only
be liable for such acts as they authorized. And the power given being
conditional, and the condition on which its exercise depended not having
occurred, and the delivery being entirely unauthorized, the principals were
not bound.

APPEAL by the defendants, from a judgment entered upon
the decision of one of the justices of this court, at the
Albany circuit, in favor of the plaintiffs, on the 14th of
March, 1863, for $15,531.65. On the 24th of December,
1855, the commissioners of the canal fund resolved to loan,
and did loan, in the nature of a deposit, from premiums
received on loans, to the Bank of Corning, the sum of
$25,000, at an interest of five per cent. On the same day,
the bank entered into a contract to take the loan on the terms
proposed. The defendants thereupon executed to the people
of the state of New York the bond on which this action was
brought. The bond recited the making of the above loan by
the commissioners of the canal fund, to the Bank of Corning,
at an interest of five per cent, payable quarterly, upon the
proviso, terms and conditions specified in a contract annexed
to the bond, and bearing even date therewith. Then followed
a joint and several covenant, on the part of the defendants,
that the said bank should well and faithfully do and perform
all things contained in said contract on its part to be done or
performed, and should well and faithfully account for and
pay over all money deposited with or loaned to it, or for
which it should in any way become liable in and by said con-
tract, according to the terms and provisions thereof. On the
31st of December, 1855, Mr. Bostwick, the president of the
bank, delivered the bond to the auditor of the canal depart-
ment, and the same was duly approved. Thereupon the sum
of $25,000 was deposited for account of the sinking fund,
pursuant to agreement.

On the 15th of April, 1858, the state treasurer drew upon
the bank for the sum of $28,015.46, that being the amount

then due from the bank on account of this loan. Payment was refused, and the draft was duly protested.

On the 25th of March, 1859, this action was commenced, to recover a balance of $13,463.76 due on this bond, for so much of said deposit that had never been repaid. On the trial, the defendants, William Mallory, Thomas A. Johnson, George T. Spencer, Charles C. B. Walker and Almeron Field, set up as a defense, and insisted, that the loan was illegal, and that the bond taken as security for the money loaned was without authority and void. They also claimed that the bond was executed by all the defendants except Bostwick and Laurin Mallory, upon the condition that it should be executed also by Andrew B. Dickinson, before it was delivered, and that it was not so executed. The defendants testified, in substance, that the bond was signed by the defendants on the day it bears date, at the office of Mr. George T. Spencer, in Corning; that it was stated there, in presence of the signers, that Dickinson was coming there that day, (he lived six or seven miles from Corning;) that it was desirable that those present should execute the bond, so that Dickinson, when he came down, could execute it and not be delayed; that it was stated that Dickinson would sign it that same afternoon, before the same officer; that the defendants then all signed and acknowledged the bond, and made the affidavit of justification. That the bond, upon its face, was made to appear complete, no blank being left for Dickinson's name, either in the body of the bond, the acknowledgment, or in the affidavit of justification; that after the bond was thus executed it was delivered to Bostwick, the president, who was to get Dickinson to sign it; and he was not to deliver it, or use it, until Dickinson did sign it. Some of the defendants swore that they would not have signed the bond had it not been understood that Dickinson was to sign it; and that they had never waived that condition. It also appeared that Bostwick and the two Mallorys gave the other defendants a bond, indemnifying them against their liability on the bond in suit.

Bostwick testified that Dickinson arrived at the cars just in time to jump on the train with which he and Bostwick proceeded east together as far as Binghamton. There they separated, Dickinson promising to meet Bostwick at Albany, and sign the bond. Bostwick went to Albany, but Dickinson did not come. The bank was in need of the money, and he was anxious to go home; so he went to the auditor, (Mr. Cornell,) presented him the bond, and applied for and received the loan. He told the auditor that Dickinson would call and sign the bond, and the auditor replied that it was good enough as it was. There was no proof that the auditor, or any state officer, ever heard of the arrangement as to Dickinson signing the bond, or ever had the slightest reason for suspecting that the bond was not in all respects fair, regular and legal. The judge found the facts substantially as testified to by the defendants.

Judgment was entered in favor of the plaintiffs, and an appeal taken from the decision and judgment to the general term.

*J. K. Porter,* for the appellants.

*H. Smith,* for the respondents.

Miller, J. According to the finding of the court upon the trial of this cause, it appears that the bond upon which this suit was brought was executed by all of the defendants at the same time, upon the representation that another person was to sign it as co-surety, and with the understanding that one of them was to take the bond, but was not to use it until it was signed by the person who was thus to execute it. It also appears, that all the defendants but two would not have signed it except on this condition, and did not otherwise authorize its delivery.

It is contended by the counsel for the defendants who thus signed the bond conditionally, that there was no delivery

of it by or for them, and hence they are not liable. The question thus raised is one of considerable importance, not only in reference to the case under consideration, but in regard to the principle involved.

How far a party may be exonerated from liability under such circumstances is worthy of a full and careful investigation. The authorities upon the question appear, at first glance, to be conflicting, and it is important in the first place to examine the adjudications which have been made, and ascertain how far they have a bearing upon, or control, the points involved.

The plaintiffs rely upon several cases, which I will proceed to examine. The first and principal case to which our attention is called is that of *Millett* v. *Parker*, (2 *Met.* [*Ken.*] *Rep.* 608.) In that case the supreme court of Kentucky held that one who signs a covenant as surety, upon the condition and agreement, between him and the principal, that it is not to be binding upon him or delivered to the covenantee, unless another person shall also sign it, is bound thereby; although the principal to whom he intrusted it, delivered it to the covenantee without a compliance with such condition, of which and its breach, the latter had no notice. The learned chief justice who delivered the opinion discusses at some length the authorities which have a bearing upon the point involved, and questions the correctness of several of the cases which are relied upon to sustain a contrary doctrine. He arrives at the conclusion, that a delivery to the principal obligor, who is having the instrument executed for his own use, is in effect a delivery to the obligee, inasmuch as it enables the former, by delivering it to him, to apply it to the purpose for which it was designed. The case is a strong one in favor of the plaintiffs' theory, and if the principle there laid down is maintainable, it goes very far to sustain the position of the plaintiffs' counsel in the case at bar. I shall have occasion again to refer to this leading case, in the examination of the authorities which are questioned by it.

In *Butler* v. *Hamilton,* (2 *Dess. Ch. Rep.* [*S. C.*] 226,) a bill was filed to obtain relief against the liability of the complainant upon three bonds executed by him in 1789, together with another person, Daniel Bourdeaux, and as his security, to the commissioners of the treasury. The bill alleged, among other things, that the bonds were not signed by Joseph Atkinson, as they were to have been, and that it was incumbent upon the treasurers to whom they were payable to procure his signature, as the name of Mr. Atkinson was inserted in said bonds, and it was intended and meant, at that time, that the signature of Atkinson should have been affixed to the bonds. The complainant also claimed relief upon the grounds that the credit had been extended, by not urging the demands. That after the bonds were due and payable, he applied to know if they were paid to the treasury, by Mr. Bourdeaux, and was informed that on search they could not be found, and that they must have been paid ; that if he had known that they had not been paid, he could have had an indemnity from Mr. Bourdeaux. He also alleged that, at the time, he had bonds and assurances of Mr. Bourdeaux, which were given up under the idea that the bonds to the treasury were paid, and under all the circumstances—the lapse of time, the gross laches of the officers of the state, and the leaving out of the name of Mr. Atkinson as was originally intended—it would be unreasonable to compel the complainant to pay the same. The answer of the defendants admitted the execution of the bonds, but stated the ignorance of the defendant of the facts charged in the complaint. Chancellor Rutledge, in his opinion, discusses the questions raised as to the extension of the credit, and of negligence, but does not refer to the point taken that Atkinson's name was omitted, and holds that, under the circumstances of the case, the complainant was not entitled to any relief, and dismissed the bill. Even if these bonds had been signed by the defendant conditionally, yet the facts alleged showed an acquiescence in their validity, which might

well be considered as controlling, and as precluding a defense of that character.  Besides, there appears to have been no evidence as to the alleged omission, and that point was not distinctly raised and discussed, or fairly presented.  The case by no means supports the doctrine contended for by the plaintiffs' counsel.

In *Graves et al.* v. *Tucker*, (10 *Smedes & Marsh.* 9,) the action was brought against the defendants upon a bond executed by them, conditioned that the defendant Graves, who had been elected treasurer of the state, should render a true account of moneys received by him, &c.  One of the defendants pleaded that the bond was delivered to Graves as an escrow, upon the condition that two persons of solvency and wealth sufficient to pay the full penalty should sign, seal and deliver the same, besides those who had already signed it, and that blanks were left, where the names were to be filled.  Similar pleas were put in by the other defendants, and there was a demurrer to one of the pleas, which was sustained.  Upon the trial it was proved that Graves stated to one of the sureties that two other persons would execute the bond if he would, and he accordingly signed and sealed it.  It was held that the pleas demurred to were insufficient.  It will be perceived that the evidence did not show, as in the present case, a delivery of the bond to the defendant upon the condition that it was not to be delivered to the obligee until the other persons who, it was alleged, were to sign had executed it.  Clayton, J. says, in reference to the plea demurred to : "It is not a plea of an escrow, for it does not aver that they executed the bond upon *any condition* whatever.  That averment is indispensable, in a plea of an escrow.  There is not any such fraud averred in the obtaining of the instrument as will render it void as to the defendants who rely on this plea.  It does not allege that Richard S. Graves made any representations to him on the subject : his silence is the alleged ground of fraud."  The learned judge makes a remark about the defendants' placing Graves

"in a situation by which he practised a fraud on the state, if they can be released," but I do not understand that the decision is put upon any such ground. In reference to the evidence he says: "On this part of the case, the only question is whether the evidence establishes the delivery of an escrow;" thereby assuming that if it did, the defense might be upheld. He also cites from 6 *Humphrey's Rep.*, to the effect that it is incumbent on the party who alleges it to be an escrow, to prove affirmatively, not that the principal promised something further affirmatively, *but that the performance of such act was the condition upon which he was to become bound or the instrument to be delivered as his act and deed.* In the case at bar, the condition upon which the bond was signed was proved to be that it was not to be used until after it had been signed by Dickinson; and it presents an entirely different state of facts from the one last cited.

In *Cumberlege et al.* v. *Lawson,* (40 *Eng. L. & Eq. Rep.* 228,) an action was brought for a breach of covenant in an indenture expressed to be made between G. of the first part, the defendant and two others, as sureties of G., of the second part, and the plaintiffs of the third part. G., the defendant, and two other sureties, jointly and severally covenanted to repay the plaintiffs moneys advanced by them to G. The defendant pleaded that he executed the indenture in the faith that P. (one of the sureties) should join therein, and execute the same; that P. never did join therein and execute the same. The plea was held to be bad. The decision was put upon the ground that the plea did not aver that the deed was executed conditionally and delivered as an escrow. Cresswell, J. says: "The defendant does not say that he never did seal or deliver; nor that he delivered the deed as an escrow on condition that Pierce should execute; nor that he was betrayed into sealing and delivering on the faith that he was not bound unless Pierce executed; and I can find nothing on the face of the plea to lead to the conclusion that there was any such stipulation. All the defendant says is,

The People *v.* Bostwick.

that he executed the deed on the faith that Pierce should execute it. That is clearly not sufficient. If the defendant delivered the deed as an escrow, on condition that he was not to be bound unless Pierce executed it, he should have so pleaded." Crowder, J. expressed an opinion that when the defendant sought to avoid the effect of the deed he must show either that he delivered it as an escrow, not to take effect until a certain event had happened, or that he was induced by fraud to deliver it, or some other legal ground for getting rid of the effect of the deed. The decision in this case, in my opinion, falls far short of upholding the plaintiffs' case.

The authorities already discussed comprise all the cases which have been cited or which can be considered as supporting the doctrine contended for by the plaintiffs' counsel; and with the single exception of *Millett* v. *Parker*, I think, do not sustain any such position. So far then as the authorities are concerned, the plaintiffs must stand or fall upon the soundness of the principle laid down in that case.

On the other hand, numerous authorities are cited and referred to, which, it is claimed, sustain a different and a contrary rule, and which it is important to examine and consider.

In *Pawling and others* v. *The United States*, (4 *Cranch*, 219,) it was held that a bond may be delivered as an escrow, by the surety, to the principal obligor; and if one of the obligors, at the time of executing the bond, in the presence of the obligors, say, "we acknowledge the instrument, but others are to sign it," this is evidence from which the jury may infer a delivery as an *escrow*, by all the obligors who are present. The authority of this case is questioned in 2 *Met.* 608, by Ch. J. Simpson, upon the ground that it does not appear to whom the instrument was delivered, or who had the possession of it, at the time of its conditional execution. The statement of the case shows that the bond was given to Mr. Ballinger. The defendants pleaded that it was delivered to one Joseph Ballinger, to be safely kept until

signed by others, and then to be delivered to one Morrison, on behalf of the United States; that Ballinger, without its being thus executed, delivered it to Morrison. The evidence tended to establish that it was thus delivered, and the marginal note also shows it. It also appears that, upon the argument, the attorney general contended that the delivery as an *escrow* ought to have been to a *third person,* and not to Ballinger, *the principal* obligor. It is quite clear, from the report of the case, that the delivery was to the principal obligor, and the objection urged by the learned judge does not appear to be sustained.

It is also contended that the merits were not before the court, in that case, and the question was not presented. I think otherwise, as the very point was decided, that the condition not having been performed, the bond was an escrow.

In the *United States* v. *Leffler,* (11 *Peters,* 86,) in an action of debt upon a joint and several bond, the principal had confessed a judgment for the amount. The United States proceeded against the other defendants, and upon the trial, the principal in the bond, having been released by his co-obligors, was offered by the defendants and admitted by the court, as a witness to prove that one of the co-obligors had executed the bond on condition that others would execute it, which had not been done. The circuit court admitted the evidence, and it was held, on appeal, that there was no error in the decision on the trial. In 2 *Metcalf,* 608, before referred to, the authority of this decision is also questioned, and the judge who delivered the opinion there states that the legal effect of such a delivery was not discussed or considered, but was assumed by the court as being sufficient to make the instrument a mere escrow. It is true that it was assumed what the effect of the evidence was; but the case involved the very principle now presented for consideration, and I think is an authority in favor of the doctrine that such a defense as is interposed in the present case is available.

In *Bibb* v. *Reed,* (3 *Ala. Rep.* 88,) it was decided that a

The People *v.* Bostwick.

bond may be delivered conditionally to a co-obligor, and will not be operative as a deed of the party, until the condition is performed. Ormond, J. in delivering the opinion of the court, says: "We are satisfied that on principle there can be no difference between a conditional delivery to a *stranger or a co-obligor;* that in either case the deed can not be operative until the condition is performed, and such is clearly the weight of authority at the present day." This case is also questioned by the learned judge in 2 *Metcalf*, but I think on no substantial ground, as it is manifest the question was directly raised.

In *Perry* v. *Patterson*, (5 *Humphrey*, [*Tenn.*] 133,) it was held that where a bill was delivered to the creditor by an obligor as surety, upon condition that another should sign as co-surety, it was delivered as an escrow, and was not obligatory unless the condition was complied with, or unless he agreed that it should be obligatory upon him, after his knowledge of the refusal of the other to sign as co-surety. It was also further held, that when delivered as an escrow, by a surety, to the principal obligor, and by the latter to the creditor absolutely and without condition, the ignorance of the creditor does not discharge the condition and constitute the delivery a valid delivery. It was the business of the creditor to have informed himself of the facts connected with the delivery. Turley, J. says: "The law upon this point is settled beyond controversy, and needs at this day no investigation." The case was a bill filed by a surety, to obtain relief from a note executed under an agreement that another person should sign the same ; and on appeal the court reversed a decree of an inferior tribunal directing that the complainant, as surety, should pay one half of the note. It is an exceedingly strong case in favor of the defense interposed here.

In *Fletcher* v. *Austin*, (11 *Verm. Rep.* 447,) where a bond conditioned that P. should faithfully execute the office of deputy sheriff was signed by three only of the persons named in the body of the bond, and was not to be delivered to the

obligee until the others had signed, but was given to the obligee by P., and the others did not sign it while P. was deputy sheriff, nor until after a suit had been commenced thereon for the default of P., it was held that the persons who thus signed were not liable on the bond, nor were they rendered liable by the others signing it a long time after the default happened, unless they consented to such signing and delivery at the time. Williams, Ch. J. says: "If the bond contain the names of other obligors and is delivered without the signature of all, the obligee must inquire whether those who have signed consented to its being delivered without the signatures of the others. The cases of *Pawling et al.* v. *The United States,* (4 *Cranch,* 219,) *The United States* v. *Leffler,* (11 *Peters,* 86,) and 4 *Barn. & Ald.* 440, are authorities that this defense will avail those who thus sign a bond, if the other signatures. are not procured."

In *Black* v. *Lamb,* (1 *Beasley's N. J. Rep.* 108,) it was held that parol evidence was admissible to show that previous to the obligor's singing the deed there was an agreement between the parties to an instrument, that all the stockholders of a company should sign it, and that it should not be delivered until the signatures of all were procured. In this case the foundation of the complainant's bill, and of the right to relief, was an indemnity bond, which the bill alleged was executed and delivered by the defendants to the complainants. The issue directed to be tried was whether the agreement set up in the bill was executed by the parties thereto, as their act and deed, unconditionally, or upon the understanding and agreement that the same should be executed by the remaining stockholders of the Delaware and Atlantic Rail Road Company before the same should be delivered as an agreement binding upon the subscribers, and whether the same was in point of fact legally delivered by the parties thereto, or by their authority. The jury found in favor of the defendants upon the question presented, and the plaintiffs moved for a new trial. Upon the argument of the

cause, one of the points taken by the plaintiffs' counsel was that the judge improperly admitted parol evidence to show that previous to the obligor's signing there was an agreement between the parties that all the stockholders should sign it, and that it was signed by the obligors with the understanding or agreement that it should not be delivered until the signatures of all were procured. The case is well considered, and the authorities bearing upon the question are elaborately and fully discussed. The chancellor says: "It would be difficult to find any well adjudged case where such evidence was held inadmissible."

In the *State Bank at Trenton* v. *Evans,* (3 *Green's N. J. Rep.* 155,) the subscribing witness to a bond testified, that at the time of its execution by the defendant, he said: "This bond is not to be delivered till signed by all the persons named therein;" and upon inspection of the bond it appeared that one of the obligors had not signed it. It was held that the bond could not be received in evidence. It was also decided, in the same case, that whether a party say, "I deliver this writing *as my deed,* in the confidence that you will not deliver it to the grantee until a certain condition be performed," or whether he say, "I deliver it to you *as an escrow,* to take effect as my deed upon a certain matter being done," it is in either case an *escrow,* and will be inoperative in the hands of the party, by whatever means he may get possession of the instrument, until the condition is performed. It is the performance of the condition, and not the second delivery, that gives it vitality and existence as a deed. In this case, the bond was delivered to the obligor for whose benefit it was signed by the defendants. The same condition was made a part of the execution as in the case under consideration, and it was not to be used until signed by all who by the arrangement were to become parties to it. Ch. J. Hornblower, in his opinion, reviews the authorities at some length, and remarks: "It is evident that the word *stranger* is used

by Lord Coke in opposition to the *party to whom* the deed is made. A delivery to a co-obligor, without words, would give no more effect to the instrument than delivery to a stranger with words." Ryerson, J. argues that there was no delivery, as delivery implies that the party who has sealed has given up the control of the writing, to and for the use of the other party. He says: *"The intention to deliver,* which is the essence of the transaction, is wanting. The intention to deliver this writing was never proved, but one quite different." Again he says: "A mere parting with the *actual* possession of a writing is very different from a legal delivery, which is to give it operation as a deed."

The remarks made by the learned judge are peculiarly applicable to the present case. There was certainly no *intention* to deliver the bond in suit until Dickinson had signed it; nor to part with the control of it for the use of the other party. And although possession was temporarily parted with, there was no legal delivery of it. On the contrary, it was executed in full faith that another party was to sign it, and with an express understanding that Bostwick was to take the bond, but *not to use it until after it was signed by Dickinson.* Could any thing be more explicit or clear than such an arrangement? If there ever was a case where the party was entitled to the benefit of an understanding of this nature, the present one is of that character, and comes directly within the principle laid down in the case last cited. That case is a strong authority in favor of the defense interposed; is well reasoned; fully indorses *Pawling et al.* v. *The United States,* (4 *Cranch,* 219,) as a direct adjudication upon the point; and is entitled to great weight in the disposition of this case.

The attention of the court has been directed to some English cases which are worthy of examination, and which uphold the doctrine contended for by the defendants' counsel.

In *Johnson and others* v. *Baker,* (6 *Eng. Com. L. Rep.* 479,) before the execution of a composition deed, it was

The People *v.* Bostwick.

agreed, in the presence of the surety for the payment of the composition, that it should be void unless all the creditors executed it. The surety, at the same interview, afterwards executed the deed, in the ordinary way, without saying any thing at the time of the execution. The deed was then delivered to one of the creditors, in order that he might get it executed by the rest of the creditors. It was held that this was to be considered a delivery of the deed as an escrow, and that all the creditors not having executed it, the surety was not bound. The court say: "The conversation which, according to the evidence of Symes, took place immediately previous to the execution of this deed, must be taken as a part of the whole transaction; and if so, the subsequent delivery of the deed by the defendant was *conditional,* and not *absolute,* on his part, and then the defendant will be entitled to judgment."

In *Leaf and others* v. *Gibbs,* (4 *Carr. & P.* 464; 19 *Eng. Com. L. Rep.* 604,) it was decided, at nisi prius, that when a person signs a promissory note on a representation that others are to join, and one afterwards refuses to sign, the payees can not recover, in the action on the note, against the person who signed it, unless the jury are satisfied that such person, knowing the facts, and being aware of his rights, had consented to waive his objection. Ch. J. Tindal, in summing up the case to the jury, said: "It seems from the evidence of the plaintiffs' witnesses, that the defendant was told that his mother was to join, and therefore the obtaining of her signature was a condition, which if not carried into execution would justify the defendant in withdrawing, and if matters have not been altered since the signing of the note, the defendant will not be liable." The jury found a verdict for the defendant.

There are some other cases which tend, somewhat, to uphold the doctrine established by the authorities last cited, which it is not important to examine at length. (*See Sharp* v.

*United States,* 4 *Watts,* 21; *Fay* v. *Richardson,* 7 *Pick.* 91 *Lovett* v. *Adams,* 3 *Wend.* 380; *Gilbert* v. *North American Fire Ins. Co.* 23 *Wend.* 43; *Chouteau* v. *Suydam,* 21 *N. Y. Rep.* 179.)

With the numerous authorities discussed to sustain the position taken by the defendants' counsel, and with but a single case, so far as I have observed, upholding a contrary doctrine, there certainly should be some hesitation in overruling a long line of adjudicated cases, even if it be conceded that the application of the rule works serious injury in any single case.

While the doctrine contended for by the defendants may operate injuriously in some instances, to the party holding the security and who has received it in good faith, yet it is plainly apparent that a different rule might bind parties entirely contrary to their intentions; create increased liabilities in violation of the express condition upon which a bond or obligation has been signed, and thus work equal injustice. In the case at bar it should be noticed, that when the bond was delivered to the plaintiffs' agent, it was accompanied by a statement that another party would call and sign it. I do not, however, consider that this fact affects essentially the principle involved; although it shows that the case is not entirely free from evidence of notice which might put the agent upon his guard before he paid the money and the transaction was finally consummated.

It is said that if the defendants, who selected the person to whom they would entrust the bond, were deceived by him, and he has delivered it when they did not intend he should, they, and not innocent holders, should bear the loss. This is undoubtedly a correct rule, in reference to negotiable paper, in certain cases. (*White* v. *Springfield Bank,* 3 *Sand. S. C. Rep.* 229. *Agawam Bank* v. *Strever et al.* 16 *Barb.* 82. 18 *N. Y. Rep.* 502.) But this is not a case where the rule is applicable that "when one of two innocent parties must suffer,

he who has employed the agent and enabled him to commit a fraud, should be the loser, rather than a stranger." The plaintiffs occupy the position of taking security to which the party giving it had no title. The defendants were merely sureties, and derived no benefit from the contract. If the rule of principal and agent applies, then the defendants would only be liable for such acts as they authorized. (*Farmers & Mechanics' Bank of Kent Co.* v. *Butchers & Drovers' Bank,* 16 *N. Y. Rep.* 149, 150.)

Besides, the power conferred in this case was conditional, and the condition not having occurred on which its exercise depended, and it being entirely unauthorized, the principal would not be bound. (*Mechanics' Bank* v. *New York and New Haven Rail Road Co.,* 3 *Kern.* 634, 635.) See, also, authorities before cited, holding that the surety is not liable under similar circumstances.

An agent can not bind a party contrary to his instructions, and a special authority must be strictly pursued. (*Davenport* v. *Buckland, Hill & Denio's Sup.* 75. *Batty* v. *Carswell,* 2 *John.* 48. *Nixon* v. *Palmer,* 8 *N. Y. Rep.* 398. 3 *Kern.* 631, 637.)

In the case at bar, there was no delivery of the bond upon which this action was brought, by the sureties who now defend. It was merely left with Bostwick, upon condition that he was not to use it for the purposes intended until after it was signed by another party. It was therefore incomplete, and the transaction was not consummated. Under such circumstances, the authorities clearly hold that a person who has signed an instrument is not liable until the condition is fulfilled; and it makes no difference that he was one of the parties to it.

I think, therefore, that the judge erred, at the circuit, in holding that the bond was legal, valid and binding upon the defendants.

The conclusion to which I have arrived upon this point renders an examination of the other questions presented

unnecessary; and for the reasons given, a new trial must be granted, with costs to abide the event.

HOGEBOOM, J. concurred.

PECKHAM, J. expressed no opinion.

New trial granted.

[ALBANY GENERAL TERM, December 7, 1863.  *Hogeboom, Peckham* and *Miller*, Justices.]