JAMES W. WHITFORD, RESPONDENT, *v.* THOMAS LAIDLER AND OTHERS, APPELLANTS.

*Principal and agent — Sealed instrument — when the subscribers are individually liable, when the society, of which they are the officers, is liable — Knowledge of one lessee, when it concludes his co-lessees.*

A lease commenced: "This indenture, made the 5th day of February, 1872, between James W. Whitford, of the town of New Lisbon, county of Otsego and State of New York, of the first part, and Thomas Laidler, president; Norris Gilbert, William Elliott, Elias C. Mather and Hiram A. Matteson, vice-presidents; Wm. J. Kellogg, secretary; Hiram C. Potter, treasurer, and Adam H. Elliott, Frederick W. Russell, Jonathan C. Hollister, William Rockwell, Seeley C. Gregory and Isaac Gregory, directors, being the board of managers

of the Garrattsville Agricultural Society and Farmers' Club of the town, county and State aforesaid, of the second part, witnesseth." It ended: "In witness whereof, the said parties have hereunto set their hands and seals the day and year above written.

| | | | |
|---|---|---|---|
| JAMES W. WHITFORD. | [L. S.] | ———— ——————. | [L. S.] |
| THOMAS LAIDLER. | [L. S.] | WM. J. KELLOGG. | [L. S.] |
| NORRIS GILBERT. | [L. S.] | H. C. POTTER. | [L. S.] |
| WILLIAM ELLIOTT. | [L. S.] | FREDERICK W. RUSSELL. | [L. S.] " |
| H. A. MATTESON. | [L. S.] | | |

*Held,* that the contract, on its face, was the contract of the individuals signing it, and not of the Garrattsville Agricultural Society and Farmers' Club.

*Semble,* that it was a proper question for the jury, on proof of the circumstances attending its execution, whether the parties executed the contract supposing it to be the contract of the association, in which case the persons signing it would not be individually liable thereon.

*Semble,* that the fact that the contract was subscribed by a part only of the persons named as parties of the second part therein, should be submitted to the jury on the question whether or not it was the understanding that the instrument should not take effect until all the parties of the second part had subscribed it, together with such proof as to the acts of the parties as was given, tending to show a waiver of any such condition.

That the knowledge of one of the lessees, with whom the lease was left to secure the signatures of the parties of the second part, was the knowledge of his co-lessees.

APPEAL from a judgment of the Otsego County Court, in favor of the plaintiff. The action was brought to recover $200 rent, alleged to be due from the defendants under the following lease:

This indenture, made this 5th day of February, 1872, between James W. Whitford, of the town of New Lisbon, county of Otsego and State of New York, of the first part, and Thomas Laidler, president; Norris Gilbert, William Elliott, Elias C. Mather and Hiram A. Matteson, vice-presidents; William J. Kellogg, secretary; Hiram C. Potter, treasurer, and Adam H. Elliott, Frederick W. Russell, Jonathan C. Hollister, William Rockwell, Seeley C. Gregory and Isaac Gregory, directors, being the board of managers of the Garrattsville Agricultural Society and Farmers' Club, of the town, county and State aforesaid, of the second part, witnesseth, that the said party of the first part, for and in consideration of the rents and covenants hereinafter mentioned, hath granted

and leased, and by these presents doth grant and lease for agricultural fair purposes unto the said parties of the second part and their successors in office, all that certain piece of land as surveyed by Soloman C. St. John, October 28, 1871, with the privilege of erecting thereon necessary fair buildings and pens for stock, etc., on exhibition, and containing about twelve acres of land, be the same more or less, to have and to hold the said above described premises unto the said parties of the second part or their successors in office, three days in each year; from the 5th day of February, 1872, for and during the term of ten years thence next ensuing, yielding and paying therefor unto the said party of the first part, his heirs or assigns, yearly and every year during the said term hereby granted, the yearly rent or sum of $200. And the said parties of the second part doth for themselves and their successors in office, covenant and agree to and with the said party of the first part, his heirs and assigns by these presents, that the said parties of the second part and their successors in office, shall and will yearly and every year during the term hereby granted, well and truly pay or cause to be paid unto the said party of the first part, his heirs and assigns, the said yearly rent of $200, and the said party of the first part for himself, his heirs and assigns, doth covenant and agree by these presents, that he will cause the grounds above leased to be properly fenced with a tight board fence eight feet high, with suitable places of entrance upon the said grounds, such places of entrance to be closed and protected by suitable gates, and to keep the said fence and gates in suitable and proper repair during the said term of ten years; and that he will also build and keep in repair a good and substantial road bridge across the Butternut Creek, near the tannery of Asa B. Chase, for the accommodation of the said Agricultural Society and Farmers' Club, and also grant to the said society and club the right of way across his lands from the Butternut Creek road across said bridge to the grounds herein leased. And the said party of the first part further covenants and agrees to and with the said parties of the second part and their successors in office, that he will make and execute unto them a new lease similar to this, and to run for the same period of ten years of the premises aforesaid upon the due request and application of the said parties of the second part or their successors in office; such

application to be made within twenty days of the expiration of the aforesaid term, granted by these presents.

In witness whereof the said parties have hereunto set their hands and seals the day and year above written.

Sealed and delivered in presence of }

| | |
|---|---|
| JAMES W. WHITFORD. | [L. S.] |
| THOMAS LAIDLER. | [L. S.] |
| NORRIS GILBERT. | [L. S.] |
| WILLIAM ELLIOTT. | [L. S.] |
| H. A. MATTESON. | [L. S.] |
| —— —— | [L. S.] |
| WM. J. KELLOGG. | [L. S.] |
| H. C. POTTER. | [L. S.] |
| FREDERICK W. RUSSELL. | [L. S.] |

*H. Sturges*, for the appellants.

*J. A. Lynes*, for the respondent.

LEARNED, P. J.:

This action is on a sealed contract of lease. The plaintiff is the party of the first part. The defendants parties of the second part. In the lease the defendants are severally described as president, vice-presidents, secretary, treasurer and directors; "being the Board of Managers of the Garrattsville Agricultural Society and Farmer's Club." This society and club was an association, not shown to have been incorporated. Of the thirteen persons named in the lease as parties of the second part, the lease is signed and sealed by only seven. The lease is to the parties of the second part and their successors in office, and is for the term of ten years.

The first point made by the defendants is that, on its face, the contract was with the association and not with the defendants individually. The defendants cited *Hood* v. *Hallenbeck* (14 Sup. C. N. Y., 362). The distinctions between that case and the present are several. That was an action on a promissory note, signed by five persons, describing themselves as trustees of St. Johns Lutheran Church. That church was a corporate body, and its corporate seal

was affixed. Whatever might have been the presumption of law in that case, it was proved, as a fact, that the note was given for a previous indebtedness of the corporation.

The case of *Bellinger* v. *Bentley* (8 Sup. C. N. Y., 562), was an action on an unsealed contract, made in the name of trustees of a cheese manufacturing company — a corporation. Proof was given of the authority of the trustees and of the plaintiff's knowledge that the trustees were contracting not for themselves.

But, without examining other and early authorities, it seems to us that recent decisions of the Court of Appeals have settled this question. In *Kiersted* v. *O. and A. R. R. Co.* (69 N. Y., 343) the plaintiffs, as lessors, and Smith, as lessee, executed a lease under seal. The lease recited that Smith was the general agent for a certain route comprising the following railroads, naming the defendants. This fact also appeared extrinsically; and it also appeared that Smith had authority to negotiate for a lease for an office for their business, and that he occupied the premises for the purposes of his agency. The court said that the lease was signed and sealed in his individual capacity; that the form of the lease made him lessee; that the covenants could only be enforced against the party who on the face of the lease appeared to be covenantor, although in fact he acted for another. The court cite with approval *Briggs* v. *Partridge* (64 N. Y., 357) and the old case of *Taft* v. *Brewster* (9 Johns., 334). In that case a bond, signed by persons describing themselves as trustees of a certain Baptist society, was held to be their individual bond. And, also, the case of *Stone* v. *Wood* (7 Cow., 452), where a charter party between Stone of the one part and " Wood, as agent of J. & R. Raymond," signed and sealed by said Stone and said Wood, was held to be the contract of Wood. Also the case of *Guyon* v. *Lewis* (7 Wend., 26), which is very similar. These old cases are, therefore, approved in that recent case, notwithstanding that the doctrine as to instruments not under seal has probably been modified in the point under consideration. The case of *Randall* v. *Van Vechten* (19 Johns., 60), and similar cases, are explained in *Briggs* v. *Partridge* (*ut supra*) to be based on this principle, that where the sealed contract is, in form and in law, the agent's, but the principal's interest appears on the face and he has ratified it by acts *in pais*, and the contract would have been valid

without a seal, the principal may be liable in assumpsit on the promise contained in the instrument. Evidently that principle does not apply here. The question is here, not whether, under some possible proof, the association might not have been made liable, but whether, on the face of the contract, the signors are not liable themselves *prima facie.*

But, again, the learned judge did not hold that the contract was conclusive as to the defendant's liability. After stating that, on its face, it was their contract, he submitted the question to the jury, on proof of the circumstances attending its execution, whether the parties executed it supposing it to be the contract of the association, and he charged that if they did so the defendants were not liable. The jury found for the plaintiff and, therefore, we have the fact that the parties, plaintiff and defendant, executed this contract, understanding that it bound the defendants individually. On such a finding the defendants would be liable, even if the contract had been unsealed.

Next, it was urged that the contract was executed upon a condition that it was not to be valid or operative until it should be signed by the other parties, whose names appear in the instrument, and that it was to be delivered to Kellogg, to be held by him until so signed, and then deposited in the town clerk's office. This question the learned judge submitted to the jury on conflicting evidence.

He further charged that if the contract was executed on these conditions, that the defendants might, if they chose, subsequently waive these conditions; and he submitted to the jury the question whether or not they did waive the same. And on this point he charged that the defendants, having the contract in the hands of one of their number, holding it as their agent, would be charged with knowledge whether or not the condition was complied with; and if they went on and acted under the contract, and allowed plaintiff to do the same, and supposed that the conditions had been waived or complied with, understanding it was their individual contract, then it was a waiver of the conditions. The defendant excepted to the charge that Kellogg, as agent, held the contract, and that defendants were chargeable with knowledge of it. Kellogg, in the lease, is called secretary of the association. The plaintiff had signed the lease, and according to the evidence, the object of leaving it with

Kellogg was that he should procure the signatures of the others. He did subsequently procure the signature of Elliott, and he still continued to retain the lease. We see no error in the language of the learned judge. Kellogg was one of the lessees. His possession of the lease was for the lessees ; even if it was under the conditions above stated. And we do not see why (if the lease was delivered on the conditions alleged) the defendants were not chargeable with knowledge whether or not the conditions had been complied with. This lease was dated February, 1872. The plaintiff subsequently built the fence as he had agreed. The association held its fair on the grounds in 1872, 1873, 1874 and 1875. They received rent. They rented the privilege of selling refreshments. In 1872 they graded a track. In 1873 and 1874 one of the defendants repaired the track which had been injured by a freshet, and for several years they paid the rent to the plaintiff. These acts were done by these individual defendants or some of them. Now the learned judge, in submitting to the jury the question whether, by these and other acts, the defendants had waived the conditions (if any there were), was careful to say that, if these acts were done by the defendants simply in their capacity as members of the association, and had nothing to do with the contract they had signed, then there was no waiver. Thus the jury must have found either that there were no conditions such as were alleged, or that those conditions had been waived by acts of these defendants done, not as members of the association but as individual lessees. (*Ireland* v. *Nichols*, 46 N. Y., 413.)

The defendants urge that the fact that a fair was held on the grounds was no waiver of the alleged conditions ; but we must remember that the jury must have found that the defendants signed the lease, understanding that it was their individual contract. If that were so, then they understood that they, and not the association, were the lessees, and that they individually were entitled to possession. Whatever then they permitted the association to do, in the way of possession and improvement, was an acceptance on their own part of the benefit of the lease. If they took possession, or authorized the association to take possession, they did so only under the lease, and therefore they affirmed its validity. Having had the benefit of it, they are estopped from saying it never was completely executed. They entered into possession

under it, and thereby asserted their rights as tenants. We see no error in the case.

The judgment should be affirmed with costs.

BOARDMAN, J., concurred.

BOCKES, J., dissenting:

I think enough appeared on the face of the instrument to admit the parol proof that the parties executing it were not to be personally bound, and the evidence is entirely conclusive to my mind that the parties sought to be charged had no intention of incurring personal obligation by their acts. The plaintiff also understood this perfectly well. The evidence shows he did not himself suppose, at the time the instrument was prepared and executed, that the defendants were to be personally bound by it. So it is laid down in the books that in such case and where the party to whom the obligation is given understands the character in which the other is acting, the facts may be shown by parol with a view to relieve the latter from a claim of personal liability. It is only when there is nothing in the body of the instrument or attached to the signature to indicate that it was intended to create other than a personal obligation that such evidence becomes inadmissible. In this case the parties (lessees) are described in the instrument as "President," "Vice-President," "Secretary" and "Board of Managers" of the "Garrattsville Agricultural Society and Farmers' Club," and the lands were leased "for agricultural fair purposes." The lease, too, ran to the officers named, and "their successors in office," and the instrument purported to bind "the successors in office," to the payment of the rent. Thus the instrument showed on its face that the officers had no personal interest in the subject-matter of the lease, and that they were acting, not for themselves, but for and in behalf of the society. But putting the case most strongly for the plaintiff, there was at least an ambiguity on the face of the instrument as to the character in which the lessees named were acting; hence parol proof was admissible to show the real and true position of the parties in the transaction; and the proof is conclusive to the effect that all of them, plaintiff and defendants, well understood that the latter were not acting for themselves, and were not intended or expected to be held personally liable as lessees. Any inference to

the contrary, based on the verdict of the jury, is clearly and manifestly contradicted by the proof. To hold the defendants personally liable to the plaintiff on the facts proved in this case would, as it seems to me, be grossly unjust, and, as I think, would be contrary to law as settled by many decisions in this State. It may be, and I think the fact is, that a different rule from that above indicated exists in some of the other States. I do not deem it necessary here to collate the cases in those States, nor to mark a distinction often noted between instruments under seal and those not sealed. This distinction is without force in this State. Here, as I think, the law applicable to an instrument raising on its face a question, at least, as to the personal liability charged, is firmly settled in favor of the allowance of parol proof with a view to show the intention of the parties. This does not infringe upon the doctrine that parol evidence is inadmissible to contradict a written instrument. The following are some of the cases on which I base my conclusion: *Bellinger* v. *Bentley* (1 Hun, 562); *Haight* v. *Sahler* (30 Barb., 218); *Hood* v. *Hallenbeck* (7 Hun, 362); *Lee* v. *Methodist Episcopal Church of Fort Edward* (52 Barb., 116); *Chouteau* v. *Suydam* (21 N. Y., 181, 182); *Auburn City Bank* v. *Leonard* (40 Barb., 136); *Stanton* v. *Camp* (4 Barb., 274). That the instrument was under seal does not affect the question here under examination. A seal is presumptive evidence of a consideration, but has no such sacredness attached to it as will operate as an estoppel against proof of the truth. In several of the cases cited the instruments brought under examination were under seal. In my judgment the defendants established a complete defense on this branch of the case.

*Second.* It further seems to me that the proof is entirely insufficient to show a delivery of the instrument. It was distinctly agreed that the instrument should not be deemed to be delivered until signed by all the persons whose names were inserted in it as officers of the society, and until deposited in the clerk's office fully executed. The evidence is uncontradicted in this, that Mr. Kellogg was to keep the contract in his possession, undelivered, until all the signatures were procured, and then it was to be placed in the town clerk's office "*for all the parties.*" These were the terms of delivery, the conditions on the performance of which the instrument should become operative, and the plaintiff himself was a party to

this understanding and arrangement. All the signatures were not obtained nor was the paper placed where it was agreed that it should be placed "for the parties." The instrument was to have no binding force unless all signed and the deposit was made. Such is the uncontradicted evidence. Indeed, the plaintiff himself testified to the fact of these conditions. Thus it seems the instrument was not to be deemed operative until executed and deposited as agreed upon by the parties to it. These conditions and terms were never performed; and it may be added here that there is no evidence whatever that they were ever waived. Nor can it be maintained that the evidence of non-performance of the conditions was inadmissible. (*Roberts* v. *Jackson*, 1 Wend., 478; *Bronson* v. *Noyes*, 7 id., 188; *Lovett* v. *Adams*, 3 id., 380; *Chouteau* v. *Suydam*, 21 N. Y., 179, 181; *The People* v. *Bostwick*, 32 id., 445; in Sup. Ct., 43 Barb., 9.) The doctrine of the last case cited has been questioned (*Russell* v. *Freer*, 56 N. Y., 71; *Richardson* v. *Rogers*, 50 How., 403), but only to the extent that a promisee should not be made the victim of private understanding between the promissors of an instrument, of which understanding the former was ignorant. In this case the plaintiff knew of and indeed was a party to the agreement, that the instrument should not be deemed operative until the conditions agreed upon should be performed. Those conditions remaining unperformed, the instrument was inoperative. To allow the plaintiff to repudiate his own agreement as to those conditions would be most unjust to these defendants. It is entirely clear on the proof, as it seems to me ( 1 ), that the plaintiff himself did not understand that the defendants were to be personally liable, and that he understood that he was to look to the society for his rent; and ( 2 ) that the instrument, however it should be construed, was inoperative because of the non-performance of the conditions which were, by the understanding of the parties, to give it validity.

In my judgment the defendants are entitled to a new trial.

Judgment affirmed, with costs.